## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Subpoenas to **BUCKLEY SANDLER, LLP; CARODAN RISK MANAGEMENT, LLC; DK RISK MANAGEMENT, LLC; K&L RISK MANAGEMENT, LLC; MONTICELLO RISK MANAGEMENT, LLC; WEST SIDE INSURANCE, LLC; BENJAMIN KLUBES; CHRISTOPHER WITECK; DAVID KRAKOFF; JOHN P. KROMER; JEFFREY P. NAIMON; and DAVID BARIS,** §§§§§§§§§§§§§§ | Case: 1:19−mc−00013<br>Assigned To : Bates, John D.<br>Assign. Date : 1/31/2019<br>Description: Misc. |
| **Third Parties.** §§ | |

**IN THE MATTER OF**

| | |
|---|---|
| **CHRISTOPHER JARVIS,**<br><br>  **Plaintiff/Counter-Defendant,**<br><br>v.<br><br>**TAYLORCHANDLER, LLC, T. BRITT TAYLOR, NORMAN CHANDLER, AND JAMES R. JOHNSON,**<br><br>  **Defendants/Counter-Plaintiffs.** §§§§§§§§§§§§§ | **Civil Action No. 2:17-CV-396**<br>**United States District Court**<br>**Middle District of Alabama**<br>**Northern Division** |

## PLAINTIFF CHRISTOPHER JARVIS'S MOTION TO QUASH THIRTEEN THIRD-PARTY SUBPOENAS

Pursuant to Federal Rule of Civil Procedure 45(d)(3), Plaintiff Christopher Jarvis hereby

moves to quash the third-party subpoenas of Buckley Sandler, LLP; Carodan Risk Management,

LLC; DK Risk Management, LLC; K&L Risk Management, LLC; Monticello Risk Management,

LLC; West Side Insurance, LLC; Benjamin Klubes; Christopher Witeck; David Krakoff; John P.

Kromer; Jeffrey P. Naimon; and David Baris (collectively, "Respondents"), attached hereto as

**RECEIVED**

JAN 3 1 2019

Clerk, U.S. District and
Bankruptcy Courts

Exhibit A,[1] issued by Defendants TaylorChandler, LLC, T. Britt Taylor, Norman Chandler, and

James R. Johnson (collectively, "Defendants") in the pending matter, *Jarvis v. TaylorChandler,*

*LLC*, No. 2:17-CV-396, in the United States District Court for the Middle District of Alabama.

## I.   INTRODUCTION & BACKGROUND

### A.   Mr. Jarvis Sued Defendants for Withholding Money Related to the Earnout and Compensation Owed to Him from Defendants' Acquisition of His Company, Jade Risk, and Subsequent Employment of Mr. Jarvis.

Plaintiff Christopher Jarvis sued Defendants on June 19, 2017, in the United States District

Court for the Middle District of Alabama. *See* Ex. B, Docket Sheet. Mr. Jarvis's suit stems from

Mssrs. Taylor, Chandler, and Johnson's (collectively, "Individual Defendants") acquisition of his

former company, Jade Risk, LLC ("Jade Risk"), in July 2016, and subsequent employment of Mr.

Jarvis by Defendant TaylorChandler, LLC (which is controlled by Mssrs. Taylor and Chandler).

Ex. C, at 2-3, First Amended Complaint. Through Jade Risk, Mr. Jarvis helped individuals and

companies create and manage their own captive insurance companies. Ex. C, at 4-5. The

Individual Defendants operated a separate company in the same captive industry as Jade Risk

called Arsenal Insurance Management, LLC ("Arsenal"), and they desired to expand their

business, so they acquired Jade Risk from Mr. Jarvis via a Membership Purchase Agreement and

absorbed Jade Risk and its book of business into Arsenal. Ex. C, at 9-10. Contemporaneous with

that transaction, Mr. Jarvis and TaylorChandler entered into an Employment Agreement whereby

Mr. Jarvis would continue his work in the captive insurance industry, working with Arsenal and

the Individual Defendants to maintain and grow Arsenal's revenue in that industry. Ex. C, at 3-6.

Both Mr. Jarvis's earnout from the sale of Jade Risk and his compensation for his

employment with TaylorChandler were dependent upon the amount of business that he

---

[1]   All exhibits herein are to the Declaration of T. Cleveland and are abbreviated "Ex. #."

generated—including income tied to the amount of revenue that could be attributed to his originations and bonuses for the number of captive insurance companies under Arsenal's management. *See, e.g.*, Ex. C, at 12-18. In early 2017, the Individual Defendants informed Mr. Jarvis that he had not met certain benchmarks in those agreements and subsequently withheld hundreds of thousands of dollars of earnout and compensation. Ex. C, at 3-6. Mr. Jarvis requested to inspect the financial information that formed the basis of that decision, on the belief that a shortfall was highly unlikely. *Id.* Instead of showing him the books, the Individual Defendants instead fabricated reasons to terminate Mr. Jarvis's employment with TaylorChandler, and have continued to withhold earnout and compensation that is due to him. Accordingly, Mr. Jarvis filed suit to hold Defendants to the agreements that they struck when they acquired Jade Risk. Ex. C, at 19-26.

**B.    Third-Party Buckley Sandler, LLP and Others Did Business with Mr. Jarvis Prior to Defendants' Acquisition of Jade Risk, and Subsequently Did Business with Defendants' Company, Arsenal Insurance Management.**

The subpoenas are directed to thirteen related parties that are adjacent to the litigation. Buckley Sandler, LLP, is a law firm based in Washington, D.C., and the six named individuals—Benjamin Klubes, Christopher Witeck, David Krakoff, John P. Kromer, Jeffrey P. Naimon, and David Baris (collectively, the "Buckley Sandler Partners")—are current or former partners at Buckley Sandler. The six limited liability companies—Carodan Risk Management, LLC; DK Risk Management, LLC; K&L Risk Management, LLC; Monticello Risk Management, LLC; and West Side Insurance, LLC (collectively, the "Buckley Captives")—were captive insurance companies under Buckley Sandler's control that were managed by Arsenal during a portion of the relevant time period.[2]

---

[2]    All thirteen subpoenas are identical and were served at the same address—1250 24th Street NW, Suite 700, Washington, DC 20037—which is Buckley Sandler's DC office.

Mr. Jarvis and Buckley Sandler's relationship predates Defendants' acquisition of Jade Risk. *See, e.g.*, Decl. of C. Jarvis, at ¶ 3. Mr. Jarvis is a published expert and well-versed in the sale and management of several insurance products, and, prior to the acquisition of Jade Risk, was active in several different segments of the insurance industry. Decl. of C. Jarvis, at ¶ 1-2. Accordingly, he sold several life insurance products to individuals associated with Buckley Sandler. Decl. of C. Jarvis, at ¶ 3. *After* the acquisition of Jade Risk by Defendants, Buckley Sandler utilized Arsenal to manage the Buckley Sandler Captives. Decl. of C. Jarvis, at ¶ 5. In 2017, the six Buckley Sandler captives withdrew from Arsenal's management and transferred their management to a different company that has no business association with Defendants or Mr. Jarvis.

**C.      Defendants Are Seeking Discovery Based on Two Specious Counterclaims for Which Mr. Jarvis Has Already Provided Discovery.**

Defendants' discovery at issue here—the thirteen subpoenas to the Buckley Sandler entities and individuals—purports to seek information primarily regarding two of Defendants' counterclaims: (1) that Mr. Jarvis breached an agreement not to compete with Arsenal; and (2) that Mr. Jarvis, while employed by Defendants, steered the Buckley Sandler captives away from Arsenal and into another company. Ex. D, at 6-7, First Amended Counterclaim. A bit of background elucidates these claims.

During the negotiation to purchase Jade Risk, and with the knowledge that Mr. Jarvis had several endeavors in the insurance industry that he wished to continue post-acquisition, the Individual Defendants and Jarvis agreed that Mr. Jarvis could continue to sell insurance products— including life insurance—outside of Arsenal as long as those products were not sold to the captive insurance companies managed by Arsenal. Decl. of C. Jarvis, at ¶ 4. That agreement was reduced to writing in Section 2.1 in the Employment Agreement between Mr. Jarvis and TaylorChandler, which reads in pertinent part:

4

Notwithstanding the foregoing, *Employee is allowed to pursue other business activities and other forms of compensation, and Employee shall retain all revenue and profits therefrom*, so long as Employee fulfills his obligations herein and does not violate the terms of the Restrictive Covenants Agreement entered by Employee incident to the Membership Interest Purchase Agreement dated the same date herewith (the "Restrictive Covenants Agreement"). For avoidance of doubt, *Employee is allowed to pursue other types of insurance, financial planning and other business that are not competitive with the "Business" described in the* Restrictive Covenants Agreement. Specifically, *Employee is allowed to sell insurance to clients of the Company*; provided, however, ***Employee may not sell any life insurance products to captive insurance companies managed by the Company or Affiliates without the prior written consent of the Company.*** If Employee sells insurance to clients generated by his own efforts (including new clients and clients who were clients of Jade before the execution of the Membership Interest Purchase Agreement), Employee shall retain all revenue and profits therefrom. When clients obtained by the Company without the services of the Employee are introduced to Employee for insurance brokerage, a referral fee of 20% of the net commission received by the Employee shall be paid to the Company.

Ex. E, at 2, Employment Agreement.

In their Amended Counterclaims, Defendants contend—on information and belief—that Mr. Jarvis violated the Restrictive Covenants Agreement by selling life insurance products to captive insurance companies managed by Arsenal. Ex. D, at 8. However, they have not articulated a single captive insurance company to whom Mr. Jarvis sold life insurance, and despite having produced nearly 150,000 pages of documents—including what appears to be all or substantially all of Mr. Jarvis's relevant email file—in the underlying litigation, Defendants have provided no evidence to substantiate this claim. Further, in response to Defendants' discovery, Mr. Jarvis has flatly denied that he sold any life insurance products to captive insurance companies managed by Arsenal—because he has not—meaning that no responsive documents could exist. *See* Ex. F, at 5-6; *see also* Decl. of C. Jarvis, at ¶ 6.

The same can be said for Defendants' counterclaim alleging that Mr. Jarvis intentionally scuttled Arsenal's business by telling its active clients to leave the company. Despite a year and a half of litigation, Defendants have still been unable to substantiate any claim regarding Mr. Jarvis

5

telling captive insurance clients to leave Arsenal. There are no emails, client notes, or testimony that corroborate the claims. And again, they have sought this discovery from Mr. Jarvis, and he has responded in kind; no documents exist because he did not tell any clients of Arsenal to leave the company. *See, e.g.*, Ex. F, at 10.

Unsatisfied with Mr. Jarvis's answers and the lack of any evidence in their own possession to substantiate these claims, Defendants have now served nineteen third-party subpoenas, including the thirteen subpoenas at issue here, in a fishing expedition that seeks to build *any* counterclaim they can against Mr. Jarvis to offset the six- or seven-figure exposure they face in the underlying suit. *See, e g.*, Ex. C, at 3. Those subpoenas should be quashed for several reasons, including that the requests seek information far beyond the circumscribed claim that Mr. Jarvis sold life insurance products to captive insurance companies managed by Arsenal or intentionally scuttled Arsenal clients, and that they have requested much of this information from Mr. Jarvis, which abrogates the need for Rule 45 discovery.

## II.   ARGUMENT

### A.   Pursuant to Rule 45, the Court Must Quash a Third-Party Subpoena That Places an Undue Burden on the Third Party.

The Court should quash the subpoenas because it subjects the Respondents to an "undue burden" by requesting documents that far exceed the scope of the underlying litigation or that it could acquire from Mr. Jarvis. *See* Fed. R. Civ. P. 45(d)(3)(A), (B). As this Court has noted, Rule 45 "requires that district courts quash subpoenas that call for privileged matter or would cause an undue burden." *In re Micron Tech., Inc. Sec. Litig.*, 264 F.R.D. 7, 9 (D.D.C. 2010) (internal quotation marks omitted) (quoting *Watts v. SEC*, 482 F.3d 501, 508 (D.C. Cir. 2007)).

The scope of permissible Rule 45 discovery is coterminous with Rule 26. *In re Denture Cream Products Liability Litig.*, 292 F.R.D. 120, 123 (D.D.C. 2013). Further, several factors aid the court in determining whether Rule 45 discovery places an undue burden on the third party:

> The Rule 45 "undue burden" standard requires district courts supervising discovery to be generally sensitive to the costs imposed on third parties. In addition, Federal Rule of Civil Procedure 26(b)(1)-(2) requires district courts in "all discovery" to consider a number of factors potentially relevant to the question of undue burden, including: whether the discovery is "unreasonably cumulative or duplicative"; whether the discovery sought is "obtainable from some other source that is more convenient, less burdensome, or less expensive"; and whether "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."

*Watts*, 482 F.3d at 509 (citations & brackets omitted). Thus, if the discovery is "obtainable from some other source that is more convenient," like a party to the litigation, then the discovery can place an undue burden on the party even if it is generally within the bounds of Rule 26. *Id.* The subpoenas here violate both of those tenets, either seeking information far beyond the claims and defenses in this case, or seeking information that is far more easily obtainable from Mr. Jarvis.

## B.    Defendants' Subpoenas Place an Undue Burden on Respondents.

Under the Rule 45 standard and this Court's case law, the Court should quash the subpoenas to the thirteen Respondents at Exhibit A because those requests place an undue burden on those parties. Specifically, they request information that could be acquired from Mr. Jarvis, they request information that is unreasonably cumulative or duplicative of information they have already sought, and they request information far beyond the scope of the litigation. For ease of analysis, this Motion will treat the numbered requests across the subpoenas as the same; all thirteen

subpoenas seek nine nearly identical categories of documents, with only minor, immaterial changes between each subpoena.[3]

>    1.    **Request Nos. 1, 2, 3, 4, 5, 6, and 7 Place an Undue Burden on Respondents Because They Seek Information Regarding Buckley Sandler's Decision to Leave Arsenal That Extends *Far* Beyond the Scope of This Case.**

The majority of Defendants' requests seek information from Respondents regarding the communications, decision-making, and other issues surrounding the six Buckley Sandler Captives' departure from Arsenal for another captive management company. Defendants have no claims against those captives, and the only allegations surrounding their departure from Arsenal concern whether Mr. Jarvis advised them to leave Arsenal for another captive management company. *See, e.g.*, Ex. D at 8. Accordingly, under Rule 26, the only relevant information would relate to communications between Mr. Jarvis and those captives wherein Mr. Jarvis told them to leave Arsenal.

That narrow scope creates two substantial problems for Defendants. First, they have already requested those documents—as they pertain to communications between Mr. Jarvis and the Buckley Sandler Captives—from Mr. Jarvis, and, indeed, he is just as likely to be in possession of those documents as would any of the subpoenaed parties. Ex. G, at 4-5 (Request Nos. 1, 7, 8, 9).

---

[3] The Buckley Sandler, LLP subpoena is an omnibus attempt to seek information regarding all six of the Buckley Sandler Captives at issue (plus additional captives that have not been subpoenaed). Ex. A at 4. Each of the individual subpoenas to a Buckley Sandler Captive is paired with a subpoena to a specific Buckley Sandler partner, seeking information on that specific Buckley Sandler Captive. *E.g.*, Ex. A at 11, 18 (identical subpoenas to Atlantic Risk Management, LLC and Benjamin Klubes, seeking documents regarding Atlantic Risk Management). In turn, the six pairs of subpoenas (each directed to a captive and a partner) are identical save for changing the name of the captive in the requests. *Compare* Ex. A at 11 (Atlantic Risk Management LLC), *with* Ex. A at 35 (Carodan Risk Management LLC).

Second, Defendants' requests *far* exceed the scope of their claims against Mr. Jarvis, seeking to peer into the business and internal decision-making of former clients that chose to no longer do business with them. As an initial matter, such requests are invalid under Rule 45 because they seek commercial information unrelated to the case. *See* Fed. R. Civ. P. 45(d)(3)(A), (B). To wit, the first seven requests do not *even mention* Mr. Jarvis, instead seeking every single document and communication that relates to the Buckley Sandler Captives' decision to leave Arsenal:

1.  *All documents and communications from 2015 to present* that reflect *your decision to surrender*, effective on or about February 1, 2018, the captive insurance plan of Atlantic Risk Management LLC (or any predecessor or successor entity) (referred to herein as "Atlantic Risk") and managed by either Jade Risk, LLC or Arsenal Insurance Management, LLC.

2.  *All documents and communications from 2015 to present* reflecting *advice, proposals, or any solicitation* you received suggesting that you and/or Buckley Sandler LLP should surrender the captive insurance plan for Atlantic Risk managed by either Jade Risk, LLC or Arsenal Insurance Management, LLC.

3.  *All documents and communications from 2015 to present* reflecting *your consideration of any advice, proposal, or solicitation* to surrender captive insurance plans for Atlantic Risk managed by either Jade Risk, LLC or Arsenal Insurance Management, LLC.

4.  *All documents from 2015 to present* that reflect *your decision to change from Jade Risk, LLC or Arsenal Insurance Management, LLC to another captive insurance manager* for the captive insurance plan of Atlantic Risk.

5.  *All documents from 2015 to present* reflecting advice, *proposals, or any solicitation you received* to change from Jade Risk, LLC or Arsenal Insurance Management, LLC to another captive insurance manager for the captive insurance plan of Atlantic Risk.

6.  *All documents and communications from 2015 to present* reflecting *your consideration of any advice, proposal, or solicitation* to change from Jade Risk, LLC or Arsenal Insurance Management, LLC to another captive insurance manager for the captive insurance plan of Atlantic Risk.

7.  *All documents from 2016 to the present*, that reflect whether you currently operate or participate in, or have operated or participated in, a captive insurance plan for Atlantic Risk or any other entity in which you have an ownership interest or with which you are affiliated, and the identity and captive insurance manager of each such plan.

Ex. A at 11-12 (emphasis added); *see also* Ex. A at 4-5 (Buckley Sandler), 18-19 (Klubes), 25-26

(Carodan), 32-33 (Witeck), 39-40 (DK Risk), 46-47 (Krakoff), 53-54 (K&L Risk), 60-61

(Kromer), 67-68 (Monticello), 74-75 (Naimon), 81-82 (West Side), 88-89 (Baris).

These seven requests have little to do with the underlying claims and defenses in the suit,

and instead seek information to which Defendants are not entitled—the internal decision-making

a former client used to leave them. If that decision-making and advice did not involve Mr. Jarvis,

that information is completely irrelevant to this action, and Defendants have utterly no right to

such information. And since they have already sought such communications from Mr. Jarvis—

who has none in his possession because he gave no such advice—the *entirety* of these requests is

beyond the scope of the litigation and places an undue burden on the Respondents.

> **2.     Request No. 8 Places an Undue Burden on Respondents Because It Is Nearly Identical to a Request That Defendants Have Already Made of Mr. Jarvis and Seeks Only Documents Which, if Any Even Exist, Would Be In His Control.**

Request No. 8 is nothing more than an attempt by Defendants to double dip and seek

documents that they have already sought from Mr. Jarvis. Specifically, every category of

documents subject to Request 8 is targeted to communications between Mr. Jarvis and the

subpoenaed party:

> 8. All correspondence, including letters, emails, and text or SMS communications, from 2016 to the present *between you and Jarvis Tower, Christopher Jarvis or any of their respective owners, officers, board of directors, employees, agents, or affiliates (collectively referred to as "Jarvis")* with respect to the following matters:
>
>> a. *Jarvis instructing you* not to pay fees to Jade Risk, LLC and/or Arsenal Insurance Management, LLC related to the provision of captive insurance management services for Atlantic Risk;
>>
>> b. *Jarvis instructing you* to pay fees for captive insurance management services provided to Atlantic Risk to Jarvis directly, instead of to Jade Risk, LLC and/or Arsenal Insurance Management, LLC;
>>
>> c. *Jarvis discussing* shutting down Atlantic Risk with you;

   d. *Jarvis discussing* with you opportunities to form new captive insurance
   companies;

   e. *Jarvis discussing* with you opportunities to obtain captive insurance
   management services from an individual or entity other than Jade Risk, LLC
   or Arsenal Insurance Management, LLC;

   f. *Jarvis discussing* selling life insurance products to you.

Ex. A, at 12 (emphasis added); *see also* Ex. A at 5-6 (Buckley Sandler), 19 (Klubes), 26 (Carodan),

33 (Witeck), 40 (DK Risk), 47 (Krakoff), 54 (K&L Risk), 61 (Kromer), 68 (Monticello), 75

(Naimon), 82 (West Side), 89 (Baris).

   Not only are those documents "obtainable from some other source that is more convenient,

less burdensome, or less expensive"—namely, Mr. Jarvis—Defendants served a *nearly identical

request* on Mr. Jarvis:

   9. Please produce all correspondence, including letters, emails, and text or SMS
   communications, from 2016 to the present *between You and any client, captive
   insurance company, or captive insurance company contact as listed on Exhibit A*
   (collectively referred to as "Captive Contacts") with respect to the following
   matters:

      a. *Instructing* Captive Contacts not to pay fees to Jade Risk, LLC and/or
      Arsenal Insurance Management, LLC related to the provision of captive
      insurance management services for any client or captive insurance company
      listed on Exhibit A;

      b. *Instructing* Captive Contacts to pay fees to You directly, instead of to
      Jade Risk, LLC and/or Arsenal Insurance Management, LLC;

      c. *Discussing* with Captive Contacts shutting down captive insurance plans
      listed in Exhibit A;

      d. *Discussing* with Captive Contacts opportunities to form new captive
      insurance companies;

      e. *Discussing* with Captive Contacts opportunities to obtain captive
      insurance management services from an individual or entity other than Jade
      Risk, LLC or Arsenal Insurance Management, LLC;

      f. *Discussing* selling life insurance products to the Captive Contacts.

Ex. G, at 5-6; *see also id.* at 8-9 (Exhibit A, which contains the Buckley entities at issue here). Several additional requests similarly seek every communication that Mr. Jarvis has made with the Respondents. Ex. G, at 4-5 (Request Nos. 1, 7, 8).

Accordingly, Request No. 8 is both "unreasonably cumulative or duplicative" and seeks information that is "obtainable from some other source that is more convenient, less burdensome, or less expensive." *Watts*, 482 F.3d at 509 (internal quotation marks omitted) (quoting Fed. R. Civ. P. 26(b)). This Court should quash Request No. 8.

### 3.   Request No. 9 Places an Undue Burden on Respondents Because It Seeks Information Unrelated to This Suit.

Finally, in Request No. 9, Defendants seek a deep dive into any other insurance business between Mr. Jarvis and Respondents, including his life insurance business:

> 9. All documents from 2016 to the present that reflect *payments of money by you and/or Atlantic Risk to Christopher Jarvis, Jarvis Tower, or any other entity or individual in which Christopher Jarvis has an ownership interest* or with which Christopher Jarvis is associated or affiliated (by employment, independent contractor relationship, or otherwise).

Ex. A, at 13; *see also* Ex. A at 6 (Buckley Sandler), 20 (Klubes), 27 (Carodan), 34 (Witeck), 41 (DK Risk), 48 (Krakoff), 55 (K&L Risk), 62 (Kromer), 69 (Monticello), 76 (Naimon), 83 (West Side), 90 (Baris). This request is purportedly tied to Defendants' counter-claim that Mr. Jarvis violated the restrictive covenant in the Employment Agreement by selling life insurance to captives under Arsenal's management. Ex. D, at 8.

But Request No. 9, like the others, has several flaws that create an undue burden for Respondents. First, the request far exceeds the scope of the claims and defenses in this case. As discussed above, *see supra* Part I.C, Defendants and Mr. Jarvis negotiated around Mr. Jarvis's other businesses—including his life insurance business—and expressly allowed Mr. Jarvis to continue those endeavors in whatever capacity he deemed appropriate, as long as he did not sell

.

life insurance products directly to captive insurance companies managed by Arsenal: "Employee is allowed to sell insurance to clients of the Company; provided, however, Employee may not sell any life insurance products *to captive insurance companies managed by the Company or Affiliates* without the prior written consent of the Company." Ex. E, at 2, Employment Agreement (emphasis added). Accordingly, the only appropriate inquiry would be whether Mr. Jarvis sold life insurance products directly to the Buckley Sandler Captives, *not* a deep dive into any and all business between Mr. Jarvis and Buckley Sandler or the Buckley Sander Partners. Information concerning any business dealings Plaintiff may have had with Buckley Sandler other than the sale of life insurance products to the Buckley Sandler Captives can have no relevance to the claims and defenses in this case, and Defendants' demand for such information threatens the Plaintiff with real prejudice. Accordingly, this request is fatally overbroad under Rule 26 and runs afoul of Rule 45, which prohibits third party discovery of "a trade secret or other confidential research, development, or commercial information." *See* Fed. R. Civ. P. 45(d)(3)(A), (B).

Second, this request is both "unreasonably cumulative or duplicative" and seeks information that is "obtainable from some other source that is more convenient, less burdensome, or less expensive." *Watts*, 482 F.3d at 509. Defendants have sought this information from Mr. Jarvis through both interrogatories and requests for production. As his interrogatory answers demonstrate, Mr. Jarvis has never sold life insurance to a captive managed by Arsenal, including the six Buckley Sandler Captives at issue here. Ex. F, at 5-6. Further, several of Defendants' document requests to Mr. Jarvis seek the same information they are seeking from Respondents in Request No. 9:

> 2. Please produce all Documents in Your possession, custody, or control reflecting payments and/or income You received from 2016 to present in relation to the provision of captive insurance plan management services or life insurance products, as identified in Your response to Interrogatory No. 2.

3. Please produce all documents in Your possession, custody, or control reflecting referral fees You received for referring an individual or entity for captive insurance management services or life insurance products from 2016 to present, as identified in Your response to Interrogatory No. 3.

. . . .

9. Please produce all correspondence, including letters, emails, and text or SMS communications, from 2016 to the present between You and any client, captive insurance company, or captive insurance company contact as listed on Exhibit A (collectively referred to as "Captive Contacts") with respect to the following matters:

. . . .

f. Discussing selling life insurance products to the Captive Contacts.

Ex. G, at 4-6. There is simply no reason why Respondents should shoulder the burden of responding to these requests for documents that are just as likely in Mr. Jarvis's possession, and that are more easily obtainable from Mr. Jarvis.

### C.   Mr. Jarvis Risks Substantial Prejudice if the Subpoenas Are Not Quashed

Defendants' attempt to peer into Mr. Jarvis's personal business dealings that they *explicitly* authorized under the relevant contracts risks substantial prejudice to Mr. Jarvis. With no evidence in their possession to substantiate their claims, and with their fruitless attempt to seek documents and information from Mr. Jarvis that does not exist, they are now turning to individuals who they know have previous business dealings with Mr. Jarvis. If Defendants are allowed unfettered access to the business records of the Respondents, regardless of whether that information is relevant to this litigation, Mr. Jarvis faces substantial reputational and financial harm.

### III.   CONCLUSION

Based on the foregoing reasons, Mr. Jarvis respectfully requests that the Court quash the subpoena, or, in the alternative, severely limit its document requests as overly broad and unduly burdensome, and to all other relief to which he is legally entitled.

14

Respectfully submitted,

Whitney C. Ellerman
    DC Bar #: 420486

_____

Paul F. Enzinna
    DC Bar #: 421819

ELLERMAN ENZINNA PLLC
1050 30th Street, NW
Washington, DC 20007
(202) 753-5553
wellerman@ellermanenzinna.com
penzinna@ellermanenzinna.com

**COUNSEL FOR PLAINTIFF CHRISTOPHER JARVIS**

## CERTIFICATE OF CONFERENCE PURSUANT TO LCvR 7(m)

I hereby certify that Matthew Murrell, an attorney representing Christopher Jarvis in the underlying litigation in Alabama, conferred with Royal Dumas, an attorney representing Defendants, on January 29, 2019, regarding this Motion. Defendants are opposed to this Motion.

_____

Paul F. Enzinna

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document has been served on Defendants' counsel by way of ECF, electronic mail, and/or First Class certified mail, as applicable, at the following address:

Royal Dumas
Gilpin Givhan, P.C.
2660 East Chase Lane, Suite 300
Montgomery, AL 36117
Phone: 334-244-1111
Facsimile: 334-244-1969
rdumas@gilpingivhan.com
ATTORNEY FOR DEFENDANTS

on this 31st day of January, 2019.


_____
Paul F. Enzinna